**Cora SLONE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 23, 1962.

Woodrow W. Burchett, Tackett & Tackett, Prestonsburg, for appellant.

John B. Breckinridge, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

WILLIAMS, Judge.

The appellant, Cora Slone, was tried in the Floyd Circuit Court for the crime of willful murder. She was convicted of voluntary manslaughter and sentenced to two years in the State penitentiary. This appeal is prosecuted from the judgment pronounced upon the verdict.

The appellant testified that she, her husband and her 12-year-old son were in their home on the night of June 11, 1960, and that her husband had been drinking heavily. He began making preparations to leave the house and intended to take a pistol with him. Knowing this the appellant took the pistol from a table drawer and put it in her

dress pocket. When she refused to relinquish possession of the pistol her husband advanced upon her and brandished a boy scout ax. She retreated but he threw the ax at her and struck her on the mouth, causing a severe laceration. He then began slapping her on the head, whereupon she lost her senses and fired the pistol. The first shot went astray, but the second shot struck her husband in the abdomen. He died in a hospital approximately two weeks later.

The appellant rests her case on the ground that the verdict is not sustained by the evidence. It is argued that the case for the prosecution was based upon a dying declaration which was incompetent and which was so absurd and in conflict with the physical facts as to be wholly unbelievable. However, there was other evidence that appellant shot her husband and had previously threatened to kill him. As a matter of fact appellant testified that the gun was in her possession during the struggle and one of her neighbors testified that appellant said she had shot her husband. That testimony was sufficient to take the case to the jury. It was said in Shepherd v. Commonwealth, 236 Ky. 290, 33 S.W.2d 4:

> "Furthermore, the killing of a human being with a deadly weapon raises an inference of malice and casts upon the defendant the burden of excusing his act, and the jury, under all the evidence, is the tribunal fixed by law to determine the guilt or innocence of the accused."

Testimony concerning the dying declaration was given by James Slone, who talked to deceased in the hospital, and was told by deceased that he was not going to live. His statement follows:

> "He said she shot him in the chest and then shot the other shot in the ceiling, and he said he throwed a coca cola bottle after she shot the shot in the ceiling and he didn't know he was hurt too bad and walked in there and laid down on the bed."

James Kendrick also stated that while deceased was in the hospital he told him he was not going to get well, and then described the altercation as follows:

> "He said he laid down and tried to rest and he got up and got him a drink and he laid back down and tried to rest and couldn't do any good and he got up and started putting his clothes on and he said he put on his pants and his undershirt and I believe his socks and started to put his shoes on and heard Cora come to the door and she asked him where he was going and he said he was going out awhile and she told him he wasn't going out and he said: 'You know my temper,' and he said: 'When she said that, I raised up and when I raised up a blaze of fire went through my body,' and he said he fell back over in the bed and he said he could remember some things but that was as far as he would go."

It is true the facts as deduced from the dying declaration differ from the facts as testified to by appellant and her witnesses. That does not render the dying declaration incompetent. Upon receipt of conflicting evidence it is within the province of the jury to determine which witnesses to believe. Higginbotham v. Commonwealth, 291 Ky. 463, 165 S.W.2d 19. The facts deduced from the dying declaration were sufficient to uphold the verdict if the dying declaration was properly admitted.

The admission of a dying declaration is an exception to the general rules of evidence. It must appear that the declaration was made in extremity, when the person was at the point of death, and when every hope of recovery was gone, every motive to falsehood was silenced and the mind was induced by the most powerful considerations to speak the truth. It is not absolutely necessary that the declarant express in so many words his apprehension of such death. It is enough if it satisfactorily appears in any mode that the decla-

ration was made under that sanction. Petty v. Commonwealth, 178 Ky. 483, 199 S.W. 20. Only the acts done and statements uttered at the time of the final encounter, the res gestae in a strict sense, are admissible as a dying declaration. Caudill v. Commonwealth, 220 Ky. 191, 294 S.W. 1042. James Slone and James Kendrick affirmatively testified that decedent stated that he was not going to live. Repetition of a statement made by him detailing the events that took place at the time the shooting occurred was competent.

There was ample evidence submitted to the jury to sustain the verdict.

Judgment affirmed.